UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ERIC MCCORMICK,

                                        Plaintiff,

        v.

THE COUNTY OF WESTCHESTER, *et al.*,

                                        Defendants.

No. 19-CV-2916 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Vik Pawar, Esq.
New York, NY
*Counsel for Plaintiff*

Giacomo Gaspare Micciche, Esq.
Irma Wheatfield Cosgriff, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

Paul Andrew Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Eric McCormick ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983 ("§ 1983")

and New York state law, against the County of Westchester ("County"), Sergeant Ruben Torres

("Torres"), Sergeant Hector Lopez ("Lopez"), C.O. Matthew Waal-Rivera ("Waal"), Sergeant

Kevin Grant ("Grant"), ESU Sergeant Michael Bourhill ("Bourhill"), C.O. Salvatore Ficarrotta

("Ficarrotta"), C.O. Troy Worrell ("Worrell"), Captain Christopher Roberts ("Roberts"),

Sergeant Michael Carozza ("Carozza"), Jason Planksy ("Planksy"), Assistant Warden Karl

Vollmer ("Vollmer"), Captain Patti Bhola ("Bhola"), John Doe 1, and Jane Doe 1 (altogether,

"Defendants"), alleging that Defendants failed to place him in protective custody pursuant to County policy or custom.  (*See generally* Third Am. Compl. ("TAC") (Dkt. No. 118).)  Before the Court is Defendants' Motion To Dismiss the claims brought in the Third Amended Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Decl. in Support of Mot. (Dkt. No. 126).)

For the reasons stated herein, the Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

#### 1.  Plaintiff's Particular Incidents

Plaintiff Eric McCormick was incarcerated in Westchester County Jail ("Jail") in Valhalla, New York.  (TAC ¶ 12.)  While incarcerated, Plaintiff encountered his gang member codefendants in December 2017 at a courthouse while participating in a proffer session as a cooperating witness.  (*Id*. ¶ 14.)  When Plaintiff returned to Jail, the "gang leader and other members of the gang and associates" (who Plaintiff then defines as "inmates") were "visibly upset" with Plaintiff and communicated to him "that they were unhappy [that] [P]laintiff was co-operating."  (*Id*. ¶ 15.)  Plaintiff began receiving threats from gang member inmates; a list of 12 such threats is attached to the Third Amended Complaint.  (TAC Ex. 1a.)  Such threats include being told that he "was going to be killed" and "stomp[ed]" out of Jail.  (*Id*.)

Plaintiff alleges that "[s]ince the first encounter in December 2017 until [P]laintiff was moved to protective custody in October 2018, Plaintiff informed the [D]efendants herein that he was targeted by" Bloods gang members.  (*Id*. ¶ 33.)  On approximately December 18, 2017 and again "in the ensuing weeks," Plaintiff informed Lopez, Waal, and Carozza that "he was

concerned about his safety due to the threats of assault by the inmates at the Jail." (*Id*. ¶ 18–19.)[1]
Lopez, Waal, and Carozza allegedly "assured [P]laintiff that his complaints would be taken
seriously, and [that] he would be safe and protected." (*Id.*)  Plaintiff also met with Torres on
multiple occasions, allegedly giving him "detailed information about the nature of the assaults
and threats from December 2017 until March 2018." (*Id.* ¶ 17.)  Torres reportedly informed
Plaintiff that he would "undertake an investigation" and "assured [P]laintiff that his complaints
would be taken seriously, and [that] he would be safe and protected." (*Id*.)  Plaintiff also
informed Roberts "about these threats and his concern for [his] safety" and was assured by
Roberts that the threats were being taken seriously and that Plaintiff would be protected.  (*Id.* ¶
32.)

At some point after the December encounter at the courthouse, Plaintiff was "assaulted
and threatened by the inmates." (*Id.* ¶ 20.)  On approximately March 1, 2018, Plaintiff was
verbally and physically assaulted.  (*Id*.)  As Plaintiff was being prepared to go to the emergency
room, he informed Bourhill "about these threats." (*Id.* ¶ 22.)  Plaintiff also informed Ficarrotta
and Worrell, who transported Plaintiff to the emergency room in an ambulance, "that he was
assaulted for being a 'snitch' and that he feared for his safety." (*Id.* ¶¶ 23–24.)  Plaintiff again
allegedly received reassurances from these Defendants that the threats were being taken seriously
and that he would be protected.  (*Id.* ¶¶ 22–23.)  When Plaintiff arrived at the emergency room,
he informed two County medical employees (John Doe 1 and Jane Doe 1) that "he was injured
because of an assault by inmates and that he feared for his safety," to which the "two employees

---

[1] While Plaintiff claims he was threatened by "the inmates at the Jail," it is unclear if he
is referring only to the gang members or inmates in general.

gave [P]laintiff similar assurances about the threats and his safety and were obligated to convey or report them to the proper personnel." (*Id.* ¶ 25.)

After the March assault, Plaintiff informed Grant "about the continued threats, assaults and the need to be protected" and was assured by Grant that his threats were being taken seriously and that he would be protected. (*Id.* ¶ 26.)

On approximately April 30, 2018, Plaintiff was again assaulted by the "inmates" and sustained a broken jaw. (*Id.* ¶¶ 27–29.) He was once again taken for emergency treatment. (*Id.* ¶ 28.)

Plaintiff additionally filed "various grievances about the threats to his safety, [and] need to be protected" to Vollmer, which were dismissed. (*Id.* ¶ 30.) Plaintiff "appealed the decision to the extent the procedures were available to him[,] but [D]efendant's inactions rendered all his appeals and his desire to appeal meaningless." (*Id*. ¶ 31.)

Plaintiff was moved to protective custody in October 2018. (*Id.* ¶ 33.)

### 2. County of Westchester Practices

Plaintiff's Complaint includes a number of allegations against the County of Westchester. First, Plaintiff alleges that the County "does not have a policy when it comes to placing individuals such as [P]laintiff who are threatened by inmates into protective custody," and that to the extent "the County has a policy that is ineffective, [] the widespread custom renders such policy a nullity." (*Id.* ¶ 36.) Plaintiff claims the County is aware of the assaults and threats Plaintiff and other individuals receive and has "failed to implement measures to prevent such harm." (*Id*.)

Second, Plaintiff alleges that the County has "failed to train its employees when they receive complaints about individuals such as [P]laintiff who are in danger" from other inmates.

(*Id*.)  Plaintiff asserts that had "the County implemented a training program then the individual [D]efendants that are named in this complaint would know how to act when presented with a situation such as [P]laintiff."  (*Id*.)  Such a training program would include training regarding "investigation of threats," "counsel[ing] individuals such as [P]laintiff, ensur[ing] that these threatened individuals remain protected, address[ing] the threats received to incarcerated individuals, [and] ensur[ing] that the threatened individuals and the individuals who are the ones threatening are kept away from each other."  (*Id*.)  Plaintiff alleges that the County is aware that its employees would "encounter situations as outlined in this complaint" and the need for "effective policy and or training for its employees" but "failed to take any action . . . amount[ing] to deliberate indifference."  (*Id*. ¶¶ 38, 40.)

Third, Plaintiff claims that when individuals such as Plaintiff file grievances about their safety and medical needs, Vollmer "simply dismisses those grievances."  (*Id*. ¶ 36.)  Plaintiff alleges that Vollmer is responsible for implementing grievance policies at the Jail and that "a majority of the grievances generated at the County Jail are dismissed without any proactive measures taken."  (*Id*.)

Finally, Plaintiff alleges that that the County has inadequate staffing to ensure that inmates who are threatened are separated from inmates who threaten to harm them.  (*Id*.)

B.  Procedural History

Plaintiff filed his initial complaint on April 2, 2019.  (Dkt. No. 1.)  Plaintiff filed the Amended Complaint on September 24, 2020.  (Dkt. No. 69.)  Plaintiff filed the Second Amended Complaint on December 23, 2020.  (Dkt. No. 91.)  Plaintiff filed the Third Amended Complaint on December 21, 2021.  (Dkt. No. 118.)

Defendants filed the instant Motion on February 17, 2022.  (Mem. of Law in Supp. of

Mot. ("Defs.' Mem.") (Dkt. No. 127).)  Plaintiff filed his Opposition on March 29, 2022.  (Mem. of Law in Opp. of Mot. ("Pl.'s Mem.") (Dkt. No. 130).)  Finally, Defendants filed a Reply on April 18, 2022.  (Reply Mem. of Law ("Defs.' Reply Mem.") (Dkt. No. 131).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second

alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8

marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in

documents appended to the complaint or incorporated in the complaint by reference, and to

matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d

99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d

306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Defendants contend that Plaintiff fails to plead sufficient facts to plausibly allege

conditions of confinement or failure to protect claims against any Defendant and that therefore,

Plaintiff's *Monell* claim also fails.  (*See generally* Defs.' Mem.)   Defendants further contend that

Plaintiff's *Monell* claim is deficient in its own right because Plaintiff fails to plausibly allege a

widespread custom or failure to train.  (Defs.' Mem. 8–10; Defs.' Reply Mem. 1–7.)  Plaintiff

rebuts Defendants' position by arguing that the multiple assaults and threats he experienced

suffices to plead the underlying constitutional violations and *Monell* claim, and alternatively that here, a single incident suffices to plausibly allege *Monell*.  (*See generally* Pl.'s Mem.)[2]

Defendants additionally argue that Plaintiff's state claims of intentional and negligent infliction of emotional distress; New York common law negligence; violations of the New York State Constitution and Human and Civil Rights Law; negligent screening, training, hiring, and retention; negligent training and supervision; and respondeat superior liability, should be dismissed because Plaintiff's federal claims are deficient as a matter of law.  (Defs.' Mem. 19.) Defendants also argue that each state law claim is deficient on the merits.  (*Id*. at 19–22.) Plaintiff has not responded to any of Defendants' arguments regarding the deficiencies in his state law claims.  (Pl.'s Mem. 2.)

### 1.  Deliberate Indifference Claims

Because Plaintiff was a pre-trial detainee at the relevant time, Plaintiff's claim falls under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted).  To state a conditions of confinement, failure to protect, or deliberate indifference to medical needs claim, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation[,]" and (2) "that the defendant acted with deliberate indifference."  *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017); *see also Darnell*, 849 F.3d at 33 n.9 ("[T]he Court's interpretation of deliberate indifference applied to any pretrial detainee claim for deliberate indifference to serious threat to . . . health or safety—such as from unconstitutional conditions of confinement, or the

---

[2] Plaintiff has withdrawn his failure to intervene claim, his deliberate indifference to medical needs claim, and his claim that the inadequate grievance policy rises to a claim under *Monell*.  (Pl.'s Mem at 2, 5; Dkt. No. 134.)

failure-to-protect—because deliberate indifference means the same thing for each type of claim under the Fourteenth Amendment." (alteration in original) (quotation marks and citation omitted)).

Under the first "objective" element, an inmate must show that the "the alleged deprivation" is "sufficiently serious," *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted), that is, the inmate must show that he was "incarcerated under conditions posing a substantial risk of serious harm." *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *7 (S.D.N.Y. Nov. 20, 2017) (quotation marks omitted) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996)).

The second element "applies differently to claims under the Eighth Amendment and the Fourteenth Amendment." *Howard v. Brown*, No. 15-CV-9930, 2018 WL 3611986, at *4 (S.D.N.Y. July 26, 2018) (citing *Darnell*, 849 F.3d at 34–35). Although the Eighth Amendment imposes a subjective standard—that the prison official "know[ ] of and disregard[ ] an excessive risk to inmate health or safety," *Darnell*, 849 F.3d at 32 (citation and quotation marks omitted)— the Fourteenth Amendment, applicable here, imposes an objective standard. That is, the prison official need only "recklessly fail[ ] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. However, "[d]espite the slightly lower standard" applicable to pretrial detainees, "which is akin to objective recklessness, any § 1983 claim or a violation of due process requires proof of a mens rea greater than mere negligence." *Miller v. Cnty. of Nassau*, No. 16-CV-5843, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) (citations, emphases, and quotation marks omitted) (quoting, inter alia, *Darnell*, 849 F.3d at 36).

9

Plaintiff invokes two deliberate indifference claims: unconstitutional conditions of confinement and failure to protect. "Failure-to-protect claims are treated as challenges to conditions of confinement." *Ruiz v. Westchester Cnty.*, No. 18-CV-7007, 2020 WL 4340788, at *5 (S.D.N.Y. July 28, 2020) (citation and quotation marks omitted). Plaintiff does not allege facts in the Third Amended Complaint that would give rise to a conditions of confinement claim separate and apart from a failure to protect claim. In particular, Plaintiff alleges that "Defendants knew that [P]laintiff was supposed to be in protective custody. However, instead of taking care of [P]laintiff's well-being, [D]efendants confined him to an area where he would be subjected to another assault." (TAC ¶¶ 66–67.) Furthermore, in Plaintiff's Opposition, he groups the conditions of confinement and failure to protect claims in the same section without differentiating between the two. (Pl.'s Mem. 12.) Because failure to protect claims are treated as challenges to conditions of confinement and Plaintiff has not raised additional facts that would give rise to a separate conditions of confinement claim, this Court analyzes them together. [3]

The Constitution requires that prison officials "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes*, 84 F.3d at 620; *see also Farmer v. Brennan*, 511 U.S.

---

[3] Courts analyze conditions of confinement and failure to protect claims separately when a plaintiff has alleged a conditions of confinement claim that is separate and apart from a failure to protect claim—for instance, claims regarding wet floors or unsanitary housing conditions. *See e.g., Morales v. City of N.Y. for Riker's Island*, No. 18-CV-6374, 2022 WL 799729, at *3–4 (S.D.N.Y. Mar. 16, 2022) (addressing plaintiff's allegations that he was denied use of the bathroom and spent five days without the bed under conditions of confinement and harm from another inmate under failure to protect); *Edwards v. Middleton,* No. 19-CV-1362, 2020 WL 4474682, at *5–6 (S.D.N.Y. Aug. 3, 2020) (addressing plaintiff's allegations that "the cell had bug and rat infestations, black mold, and a leaky toilet" under conditions of confinement, and allegations that an officer had encouraged an inmate to attack plaintiff under failure to protect); *Luckey v. Jonas*, No. 18-CV-8103, 2019 WL 4194297, at *2–5 (S.D.N.Y. Sept. 4, 2019) (analyzing harm from slipping on wet floor under conditions of confinement and harm from inmate attack while plaintiff was on the floor under failure to protect).

825, 832 (1994) (same).  Specifically, "[p]rison officials have a duty to protect prisoners from

violence at the hands of other inmates since being violently assaulted in prison is 'simply not part

of the penalty that criminal offenders pay for their offenses against society.'"  *Lee v. Artuz*, No.

96-CV-8604, 2000 WL 231083, at *4 (S.D.N.Y. Feb. 29, 2000) (quoting *Farmer*, 511 U.S. at

834).  However, "not . . . every injury suffered by one prisoner at the hands of another . . .

translates into constitutional liability for prison officials responsible for the victim's safety."

*Farmer*, 511 U.S. at 834.  Instead, "the prisoner must allege actions or omissions sufficient to

demonstrate deliberate indifference; mere negligence will not suffice."  *Hayes*, 84 F.3d at 620.

### a.  Substantial Risk of Serious Harm

 For a failure to protect claim in the context of violence between incarcerated individuals,

"courts may find a substantial risk of serious harm 'where there is evidence of a previous

altercation between a plaintiff and an attacker, coupled with a complaint by [the] plaintiff

regarding the altercation or a request by [the] plaintiff to be separated from the attacker.'"

*Walker v. George*, No. 21-CV-6070, 2022 WL 2290634, at *5 (S.D.N.Y. June 24, 2022)

(alterations in original) (citing *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *4

(S.D.N.Y. Sept. 30, 2015)).  Factors for determining substantial risks of serious harm include

"the nature of the prison population with whom [the plaintiff] was incarcerated," and "whether

there was specific information ahead of time suggesting that the plaintiff's safety was in

jeopardy."  *Vickers-Pearson v. City of N.Y.*, No. 18-CV-8610, 2020 WL 5732028, at *5

(S.D.N.Y. Sept. 24, 2020) (citation and quotation marks omitted).

Plaintiff has plausibly alleged there was a previous altercation between him and gang

member inmates—who were threatening him because he was perceived to be a cooperator—and

that he complained about the altercation.  Specifically, Plaintiff alleges that he was incarcerated

11

with gang members who became aware that he was cooperating with the prosecution in a case against fellow gang members.  (TAC ¶¶ 14–15.)  Plaintiff alleges he was repeatedly threatened over the span of multiple months—for instance, Plaintiff was told by gang member inmates that he "was going to be killed" and "stomp[ed]" out of jail.  (*Id*. at Ex. 1a.)  Plaintiff was assaulted by gang member inmates twice before his jaw was broken in a third assault by gang member inmates.  (*Id*. ¶¶ 20–21, 25–27.)[4]  And, Plaintiff alleges that he complained about the second assault, informing Ficarrotta and Worrell that he was assaulted because he was a "snitch" and that he "feared for his safety."  (*Id*. ¶¶ 23–24.)  Plaintiff has thus sufficiently alleged that he was incarcerated under conditions that posed an objective substantial risk of serious harm.  *See Robinson v. Spanno*, No. 20-CV-642, 2021 WL 1109053, at *4 (S.D.N.Y. Mar. 23, 2021) (finding that the objective prong was sufficiently alleged when a plaintiff was subject to multiple threats and physical assaults, communicated to a prison official that another attack would occur, and was then attacked by the same group that threatened violence); *Scott v. Westchester Cnty.*, 434 F. Supp. 3d 188, 199 (S.D.N.Y. 2020) (finding the objective prong was sufficiently alleged when a plaintiff was previously attacked by a gang member, informed an officer that members of the gang were trying to kill him, and was then subsequently attacked by gang members); *Hill v. Annucci*, No. 18-CV-1203, 2019 WL 8192266, at *6–7 (N.D.N.Y. Nov. 25, 2019) ("Plaintiff's

---

[4] Defendants argue that it is unclear which inmates attacked Plaintiff in the April attack, and whether they were members of the same gang that assaulted Plaintiff in March, as Plaintiff only states that the was assaulted by "inmates" on April 30.  (TAC ¶ 27, Def. Mem. 15.) However, early in the Third Amended Complaint, Plaintiff defines "inmates" as "gang leader and other members of the gang and associates."  (TAC ¶ 15.)  In fairness to Defendants, this might not have been the wisest choice of terms to describe gang member inmates, because all individuals at the facility where Plaintiff was housed were inmates.  In the future, counsel should consider a different definition, such as "gang member inmates."

complaint alleges a series of assaults all related to prison gang members and his reputation as an informant. . . . [T]he [c]ourt finds [the] [p]laintiff has adequately pled the objective prong . . . .").

b.  Deliberate Indifference

In the Eighth Amendment context, which requires subjective awareness of a risk, courts have found that the subjective prong was satisfied where "the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against the plaintiff." *Dietrich v. Cnty. of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *4 (S.D.N.Y. Sept. 1, 2020) (citation and quotation marks omitted) (finding that the plaintiff failed to plausibly allege the second prong when he "provide[d] no specifics that might provide a factual basis" for the risk to his safety, including any prior instances of violence); *see also Parris v. N.Y. State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) (finding that the plaintiff failed to plausibly allege the second prong when he did not "allege that the defendants knew of any threats made against the plaintiff or that the plaintiff had been involved in any prior altercations"); *Fernandez v. N.Y.C. Dep't of Corr.*, No. 08-CV-4294, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) (finding that the plaintiff failed to plausibly alleged the second prong, because he did not allege he "and [an] inmate were involved in a prior altercation, that [the inmate] had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between [the] [p]laintiff and [the] inmate"). Some courts in the Second Circuit have applied this framework in the Fourteenth Amendment context, requiring plaintiffs to allege that defendants either knew, or *should have known* of a "history of similar assaults" or "of any specific or direct threat." *Vazquez v. City of N.Y.*, No. 21-CV-1573, 2022 WL 2704763, at *11 (S.D.N.Y. June 17, 2022), *report and recommendation adopted*, 2022 WL 17370156 (S.D.N.Y. Dec. 2, 2022); *see also Leath v. Cnty. of Orange*, No.

13

18-CV-7318, 2020 WL 4016530, at *3 (S.D.N.Y. July 15, 2020) (finding that because the plaintiff failed to "allege that there were any prior altercations between [the] [p]laintiff and [an inmate], or that there were any specific threats made by [the inmate] to [the] [p]laintiff" the failure to protect claim failed under Fourteenth Amendment); *Charles v. Rockland Cnty. Off. of the Sheriff,* No. 16-CV-166, 2019 WL 1299804, at *3 (S.D.N.Y. Mar. 21, 2019) ("In the Eighth Amendment context, which requires subjective awareness of a risk, courts have routinely denied failure-to-protect claims when a defendant did not know an inmate faced an attack by another inmate.  The same rationale can apply to failure-to-protect claims under the Fourteenth Amendment." (citations and quotation marks omitted) (quoting *Parris*, 94 F. Supp. 2d at 363).

Plaintiff alleges that Ficarrotta and Worrell transported him to the emergency room after the March assault and that he informed them that he was assaulted because he was a "snitch" and that he "feared for his safety."  (TAC ¶¶ 23–24.)  Therefore, Ficarrotta and Worrell allegedly knew of the alleged assault in its immediate aftermath, where, drawing all inferences in favor of Plaintiff, he presumably sustained some form of injury that required his transportation to the emergency room.  (*Id*.)  This Court notes that in failure-to-protect claims arising from prison gang violence, the deliberate indifference prong is often met when a plaintiff identifies his attacker(s) by gang affiliation to the defendants.  *See Scott*, 434 F. Supp. 3d at 199 (finding the deliberate indifference standard met when a defendant was informed by an inmate that he had been attacked by a member of the Goonies, that the "Goonies were trying to kill him" and was then assaulted again by two members of the Goonies); *Hill,* 2019 WL 8192266, at *8 (finding deliberate indifference prong met when a defendant knew of an "attack where [the plaintiff] was struck in the back of his head by a 'known gang member'" and that the plaintiff was "being extorted by gang members").  It is unclear whether Plaintiff alleges he told Ficarrotta and

Worrell that he had been attacked by a specific gang or who he had been attacked by, as the Third Amended Complaint only states broadly that "[s]ince the first encounter in December 2017 until [P]laintiff was moved to protective custody in October 2018, Plaintiff informed the [D]efendants herein that he was targeted by . . . bloods gang member[s]."  (TAC ¶ 33.)  While it is uncertain whether Plaintiff told Defendants Ficarrotta and Worrell that he was attacked by gang member inmates in the March assault, "a prisoner's identification of his enemies . . . is not, necessarily, outcome determinative"— accordingly "the issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm[.]"  *Hayes*, 84 F.3d at 621; *see also Farmer*, 511 U.S. at 843 ("Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault.").

Furthermore, courts in the Second Circuit have recognized that being labeled a snitch in the prison context poses a threat to an inmate's safety.  *See, e.g.*, *Hill v. Chapdelaine*, No. 16-CV-1656, 2017 WL 62511, at *5 (D. Conn. Jan. 5, 2017) ("Identifying an inmate as a snitch poses a threat to the inmate's health and safety."); *Hamilton v. Fischer,* No. 12–CV–6449, 2013 WL 3784153, at *15 (W.D.N.Y. July 18, 2013) ("Courts have recognized that being labeled a snitch in the prison environment can indeed pose a threat to an inmate's health and safety in violation of the Eighth Amendment . . . ." (quotation marks and citations omitted)); *Allah v. Juchnewioz,* No. 93-CV-8813, 1999 WL 562100, at *3 (S.D.N.Y. July 30, 1999) ("Many courts have recognized . . . in the context of Eighth Amendment analysis, the dangers a prisoner faces from his fellow inmates when labeled a snitch or informant.").  Given the unique danger that label holds in the prison context, Plaintiff has plausibly alleged that Ficarrotta and Worrell acted

15

with deliberate indifference when Plaintiff informed them that he had been assaulted for being a snitch, and they allegedly failed to place him in protective custody. *See Ford v. Campbell*, No. 21-CV-89, 2021 WL 1601148, at *4–5 (D. Conn. Apr. 23, 2021) (holding both objective and subjective elements of deliberate indifference sufficiently alleged when officers failed to place an inmate in protective custody or in a single cell "despite knowledge of his safety risk after being labeled a snitch").

However, Plaintiff fails to plausibly allege that Bourhill acted with deliberate indifference. Bourhill allegedly was present with Plaintiff before the transport process to the emergency room after his second assault in March, and Plaintiff alleges he informed Bourhill about "these threats." (TAC ¶ 22.) However, Plaintiff does not allege he informed Bourhill he had been attacked. Because Plaintiff does not allege he communicated anything about the assault to Bourhill, he has not plausibly alleged Bourhill acted with deliberate indifference. *See Robinson,* 2021 WL 1109053, at *5 (holding that plaintiff who had been previously assaulted but only communicated to defendant that he wanted to be moved "due to [him] having issues with another inmate and not wanting to be assaulted or assaulting this person" failed to satisfy the second prong because it "lacks details of specific threats or past altercations with the other inmate"); *Corley v. City of N.Y.*, No. 14-CV-3202, 2017 WL 4357662, at *13 (S.D.N.Y. Sept. 28, 2017) (holding that two prior attacks by gang members could not support an "inference that any [d]efendant knew or should have known about the potential danger" when the plaintiff did not allege that any defendant "was aware of these confrontations").

Additionally, Plaintiff fails to plausibly allege that remaining Defendants acted with deliberate indifference. Plaintiff provides only minimal detail regarding the nature of the threats or assaults he claims he conveyed to Grant, Vollmer, Roberts, Torres, Waal, Carozza, or Lopez.

16

The Third Amended Complaint simply states that Plaintiff told Waal, Carozza, and Lopez that he "was concerned about his safety due to the threats of assault by the inmates at the Jail." (TAC ¶¶ 18–19.) Similarly, the Third Amended Complaint alleges that Plaintiff provided Torres with "detailed information about the nature of the assaults and threats from December 2017 until March 2018." (*Id*. ¶ 17.)[5] Plaintiff's alleged communications to Grant, Roberts, and Vollmer regarding the received threats are even more bare boned. (*Id*. ¶¶ 26, 30, 32.) While Plaintiff attaches a list of the threats he received at the end of the Third Amended Complaint, he fails to identify which specific threats, if any, he disclosed to these Defendants. Generally, "[c]ourts have found that, when an inmate informs corrections officers about a specific fear of assault and is then assaulted, this is sufficient to proceed on a claim of failure to protect." *Francis v. City of N.Y.*, No. 17-CV-1453, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018) (citation and quotation marks omitted) (collecting cases). However, "[t]hose cases which have found officers potentially liable for failing to prevent an attack involved clear and specific threats against an

---

[5] The information Plaintiff alleges he conveyed to Torres about the assault is distinguishable from that which he conveyed to Ficarrotta and Worrell, who were both allegedly aware Plaintiff had been assaulted for being a snitch in the immediate aftermath of the assault. (TAC ¶¶ 23–24.) Plaintiff does not allege what specifically about the assault he communicated to Torres or that Torres was aware he was assaulted for being a snitch. (*Id*. ¶ 17.) As the cases make clear, the description of the prior altercation must be sufficiently detailed so that the defendant knew or should have known the plaintiff's safety was at risk. *White v. Gutwein*, No. 20-CV-4532, 2022 WL 2987554, at *4 (S.D.N.Y. July 28, 2022) (stating in the Eighth Amendment context that "[f]or failure to protect claims that involve risks of harm posed by other inmates, courts typically deem the subjective prong satisfied if the defendant-officials had received—from either the plaintiff or other inmates—a sufficiently detailed account of the particular assaulter's specific threats to the plaintiff *or* past instances of aggression"(emphasis in original) (citation omitted)); *Robinson*, 2021 WL 1109053, at *5 (stating in the Eighth Amendment context that "courts have found that the subjective prong was satisfied where the prisoner told a corrections officer a sufficiently detailed account about one or more specific threats or past instances of aggression from a known offender").

inmate." *Velez v. City of N.Y.*, No. 17-CV-9871, 2019 WL 3495642, at *4 (S.D.N.Y. Aug. 1, 2019) (collecting cases), *appeal dismissed*, 2019 WL 3495642 (2d Cir. Oct. 17, 2019).

Finally, Plaintiff's failure to protect allegations against Doe Defendants also fail. "A plaintiff does not make out a deliberate indifference claim merely by establishing subjective awareness of a substantial risk of harm." *Manning v. Griffin*, No. 15-CV-3, 2016 WL 1274588, at *7 n.8 (S.D.N.Y. Mar. 31, 2016). A plaintiff must demonstrate both the awareness of risk and that the defendant "disregards that risk by failing to take reasonable measures to abate the harm." *Id.* (*quoting Hayes*, 84 F.3d at 620); *see also Farmer*, 511 U.S. at 844 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Plaintiff has alleged that John Doe 1 and Jane Doe 1 Defendants, "County employees," encountered Plaintiff in the emergency room, and were informed by Plaintiff that he "was injured because of an assault by inmates and that he feared for his safety." (TAC ¶ 25.) Plaintiff additionally states that Doe Defendants gave him "similar assurances about the threats and his safety and were obligated to convey or report them to the proper personnel." (*Id.*) Plaintiff, however, has not alleged what specific actions Doe Defendants took, if any, and whether Doe Defendants did report the March assault. Plaintiff only states conclusory allegations—that "[D]efendants failed to take any reasonable measures to ensure [P]laintiff's safety," "[D]efendants failed to protect [P]laintiff and exposed him to future harm," and Defendants "did nothing until [P]laintiff was attacked one more time resulting in severe injuries." (*Id.* ¶¶ 54–59.) Furthermore, a plaintiff must show that the defendant prison officials "had the ability to take some action that would have significantly alleviated the risk and yet failed to remedy the situation." *White,* 2022 WL 2987554, at *5 (citation and quotation marks omitted); *Warren v. Goord*, 579 F. Supp. 2d 488,

496 (S.D.N.Y. 2008) ("[T]o prevail, a plaintiff must show that the prison officials 'had the ability to take some [reasonable] action that would have significantly alleviated'" the risk (citation omitted)), *aff'd*, 368 F. App'x 161 (2d Cir. 2010). Plaintiff does not plausibly allege that the Doe Defendants—County medical employees at an unknown emergency room—had the ability or obligation to report the incident to an official who had the power to place Plaintiff in protective custody. Without plausible allegations that Doe Defendants failed to take actions they had the reasonable ability or duty to undertake, Plaintiff's failure to protect claim against them fails. *See Grant v. Hogue*, No. 17-CV-3609, 2018 WL 550612, at *6 (S.D.N.Y. Jan. 23, 2018) (dismissing claim against a defendant when the plaintiff failed to allege the defendant "had the authority to enter a keep separate order for [the] plaintiff and [the attacker], nor does [the] plaintiff allege [the defendant] had control over [the attacker's] movements"); *cf. Gordon v. Drummond,* No. 19-CV-8405, 2021 WL 5314604, at *9 (S.D.N.Y. Nov. 16, 2021) (finding on summary judgment that the defendant could have taken reasonable action to prevent an attack when he could have "report[ed] the possibility to a superior who could make efforts to remove the gang members"), *report and recommendation adopted*, 2022 WL 884971 (S.D.N.Y. Mar. 25, 2022); *Hill*, 2019 WL 8192266, at *8 (denying motion to dismiss when defendant knew plaintiff had been assaulted by a gang member but failed to report the assault pursuant to the Department of Corrections and Community Supervision and Office of Mental Health policy).

      2. *Monell* Claim

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right." *Sykes v. Bank of Am.*, 723 F.3d 399, 405–06 (2d Cir. 2013). However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature

caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see also Williams v. Lohard*, No. 20-CV-10571, 2022 WL 269164, at *3 (S.D.N.Y. Jan. 28, 2022) ("[The] [p]laintiff's claim against the [c]ity fails for lack of facts supporting the existence of a municipal policy or practice." (collecting cases)); *Palmer v. City of N.Y.*, 564 F. Supp. 3d 221, 240 (E.D.N.Y. 2021) (dismissing claim against city where the plaintiffs failed to "sufficiently allege[ ] that they suffered constitutional violations as a result of an official policy or custom" (quotation marks omitted)).

This multi-factor test, and particularly the fifth element, reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." (italics omitted)); *Newton v. City of N.Y.*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."); *Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held

responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'" *Davis v. City of N.Y.*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  Normally, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Okla. City v.  Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Bird v. Cnty. of Westchester*, No. 20-CV-10076, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) ("Plaintiff fails to allege the existence of any other similar incident, which dooms Plaintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality.") (citation and quotation marks omitted); *Santana v. City of N.Y.,* 15-CV-6715, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

A plaintiff may satisfy the "policy or custom" requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Atadzhanov v. City of New York,* 21-CV-5098, 2022 WL 4331304, at *11 (S.D.N.Y. Sept. 19, 2022) (citations omitted); *see also Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 226–27 (2d Cir. 2004) (describing methods of establishing *Monell* liability).  A plaintiff must also establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury.  *See Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a constitutional violation.  There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue." (emphasis omitted)); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the [c]ity."); *Hincapie v. City of N.Y.*, 434 F. Supp. 3d 61, 77 (S.D.N.Y. 2020) (finding that the plaintiff "fails to state a *Monell* claim" because the plaintiff "has not pled facts demonstrating a direct link between his injuries and the alleged municipal policy"); *Johnson v. City of N.Y.*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (quotation marks omitted)).

Plaintiff alleges that the County "does not have a policy when it comes to placing individuals such as [P]laintiff who are threatened by inmates into protective custody" and that to

the extent "the county has a policy that is ineffective, [ ] the widespread custom renders such policy a nullity."  (TAC ¶ 36.)  Plaintiff further articulates in his Opposition that "in the TAC, [P]laintiff alleges that [D]efendant County does not have a policy or the means to segregate individuals who face harm from other inmates.  Plaintiff further alleges that in the absence of the policy, the widespread custom makes the County liable under *Monell*. . . ."  (Pl.'s Mem. 5.)  Plaintiff additionally alleges that the County has "failed to train its employees when they receive complaints about individuals such as [P]laintiff who are in danger" from other inmates.  (TAC ¶ 36.)  Plaintiff asserts that had "the County implemented a training program then the individual [D]efendants that are named in this complaint would know how to act when presented with a situation such as [P]laintiff."  (*Id.*)  Importantly, Plaintiff does not allege that actions taken by government officials responsible for establishing the municipal policies or a formal policy caused the injury in question.  (*Id.*; Pl.'s Mem. 5.)  Accordingly, the Court need only analyze whether there existed a sufficiently widespread practice to constitute a custom, or whether policymakers failed to provide adequate training or supervision.  *See Atadzhanov*, 2022 WL 4331304, at *11 (listing the four modes of proving a policy, custom, or practice under *Monell*).

### a.  Widespread Practice

To demonstrate a practice is sufficiently widespread to constitute a custom under *Monell*, the practice must be so "persistent and widespread," or so "permanent and well settled as to constitute a 'custom or usage' with the force of law" and to "imply the constructive knowledge of policymaking officials."  *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 548 F. Supp. 3d 383, 400 (S.D.N.Y. 2021) (citing *Sorlucco v. N.Y.C. Police Dep't,* 971 F.2d 864, 870 (2d Cir. 1992)); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2012)

(citing *Praprotnik*, 485 U.S. at 127) (noting that to demonstrate a practice constitutes a custom under *Monell*, "a plaintiff must prove that the custom at issue is permanent and well-settled").

Plaintiff alleges that the County does not have a policy of placing threatened inmates into protective custody, and "in the absence of the policy, the widespread custom makes the County liable under *Monell*."  (Pl.'s Mem. 5.)  However, Plaintiff does not point to any instance of the County failing to place threatened inmates into protective custody beyond his own.  This alone is fatal to Plaintiff's *Monell* claim.  *See Aragon v. New York*, No. 14-CV-9797, 2017 WL 2703562, at *6 (S.D.N.Y.  June 22, 2017) (dismissing claims where "[the] [p]laintiff seems to allege the existence of a practice adopted by the [County] solely based on [the] [p]laintiff's alleged experience"); *Gordon v.  City of N.Y.*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where the plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citations omitted)). Plaintiff therefore has not plausibly alleged facts to support an inference that the County has a custom of failing to protect inmates from fellow inmates.  *See King v. City of Beacon Police Dep't*, No. 20-CV-5815, 2021 WL 1550073, at *3 (S.D.N.Y. Apr. 20, 2021) (determining that conclusory allegations that plaintiff's injury was a result of a policy or custom fail when plaintiff does not sufficiently allege the existence of a policy or custom); *Rodgers v. City of Yonkers*, No. 19-CV-5358, 2019 WL 6498529, at *4 (S.D.N.Y. Dec. 3, 2019) (determining that plaintiff's widespread practice and policy claim cannot stand when plaintiff "fails plausibly to allege facts demonstrating a custom or policy"); *Moore v. City of N.Y.*, No. 08–CV–8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a 'policy' or

'custom' 'without any facts suggesting the policy's existence, are plainly insufficient.'"(quoting *Missel v. Cnty. of Monroe*, 351 Fed. Appx. 543, 545 (2d Cir. 2009) (summary order)).[6]

In sum, Plaintiff has failed to plausibly state a *Monell* claim under a theory of widespread custom or practice.

### b.  Failure to Train

To set forth a failure to train claim, "a plaintiff must plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178, 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015).  In particular, a failure to train constitutes a policy or custom that is actionable under § 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  *City of Canton*, 489 U.S. at 390. Moreover, the Second Circuit has held that a finding of deliberate indifference requires: (1) "that a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the

---

[6] Even if Plaintiff had successfully pled that he had been subject to two or three instances of unconstitutional deprivation, courts in the Second Circuit have found such allegations inadequate to prove a widespread custom under *Monell*.  *See Jones v. Town of East Haven*, 691 F.3d 72, 85 (2d Cir. 2012) (holding that three similar incidents "fell far short of showing a policy, custom, or usage of officers"); *Giaccio v. City of N.Y.*, 308 Fed. Appx. 470, 471–72 (2d Cir. 2009) (summary order) (dismissing *Monell* claim where plaintiff could identify only four incidents); *Price v. City of N.Y.*, No. 15-CV-5871, 2018 WL 3117507, at *19 (S.D.N.Y. June 25, 2018) ("Plaintiff's allegations of three similar constitutional violations do not allow the Court plausibly to infer the existence of a widespread custom or practice that can be attributed to the City."); *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp. 3d 303, 316–17 (E.D.N.Y. 2016) (dismissing *Monell* claim based on only two similar incidents and observing that "courts in this Circuit have rejected the notion that two, three or even four incidents will support such an inference").

situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Vill. of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) (alteration in original) (citing *Walker v. City of N.Y.*, 974 F.2d 293, 297–98 (2d Cir. 1992)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiff's complaint does not "contain sufficient factual matter" to state a training deficiency "that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Indeed, Plaintiff merely alleges that the County has "failed to train its employees when they receive complaints about individuals such as [P]laintiff who are in danger" from other inmates. (TAC ¶ 36.) Plaintiff asserts that had "the County implemented a training program then the individual [D]efendants that are named in this complaint would know how to act when presented with a situation such as [P]laintiff." (*Id.*) Such a training program would include training regarding "investigation of threats," "counsel[ing] individuals such as [P]laintiff, ensur[ing] that these threatened individuals remain protected, address[ing] the threats received to incarcerated individuals, [and] ensur[ing] that the threatened individuals and the individuals who are the ones threatening are kept away from each other." (*Id.*) Plaintiff alleges that the County is aware that its employees would "encounter situations as outlined in this complaint" and the need for "effective policy and or training for its employees" but "failed to take any action . . . amount[ing] to deliberate indifference." (*Id.* ¶¶ 38, 40.) Simply put, the sum total of Plaintiff's failure-to-train claim is based on a threadbare description of the County's training, and is the type of conclusory claim that courts routinely dismiss. *See, e.g., Clarke v. Antonini*, No. 21-CV-1877, 2022 WL 4387357, at *12 (S.D.N.Y. Sept. 22, 2022) (dismissing *Monell* claim where

plaintiff failed to "allege a specific deficiency in either the [c]ity or the [c]ounty's training for his failure-to-train theory"); *Buari v. City of N.Y.*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) ("[A] plaintiff must allege facts that support an inference that the municipality failed to train its police officers" without which, a failure to train claim cannot survive (citation and quotation marks omitted)); *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-CV-3923, 2016 WL 7377238, at *11 (S.D.N.Y. Nov. 21, 2016) (dismissing failure to train claim when "Plaintiff's [] allegations regarding a supposed lack of training are too general and speculative to support a *Monell* claim"); *Triano*, 895 F. Supp. 2d at 539–40 (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program"); *Walker v. City of N.Y.*, No. 14-CV-808, 2015 WL 4254026, at *11 (S.D.N.Y. July 14, 2015) (dismissing failure to train claim when plaintiff "neither cites to procedural manuals and training guides, nor highlights the pertinent aspects of police training in order to prove the claim").

Furthermore, in addition to identifying a specific training deficiency, a plaintiff must "establish that that deficiency caused the constitutional deprivation." *Benn v. City of N.Y.*, No. 18-CV-722, 2021 WL 3193022, at *6 (S.D.N.Y. July 28, 2021) (citation omitted). Plaintiff, however, only asserts that had "the County implemented a training program then the individual [D]efendants that are named in this complaint would know how to act when presented with a situation such as [P]laintiff." (TAC ¶ 36.) Plaintiff's conclusory assertions do not suffice to plausibly allege that a deficiency in training caused his injury. *See King*, 2021 WL 1550073, at *3 (dismissing *Monell* claims when plaintiff's allegations that his injuries "resulted from a municipal policy or custom" were "wholly conclusory"); *Acosta v. City of N.Y.*, No. 11-CV-856, 2012 WL 1506954, at *11 (S.D.N.Y. Apr. 26, 2012) (dismissing *Monell* claim where the

plaintiff merely alleged that the city "failed to train its police officers," because the plaintiff

"failed to set forth factual allegations that would support a plausible inference that the [c]ity's

'policies' or 'customs' caused . . . [the] alleged violations of [the] plaintiff's rights").

Plaintiff, pointing to a single Second Circuit decision, *Amnesty America v. Town of West Hartford*, 361 F.3d 113 (2d Cir. 2004), argues he has sufficiently pled a failure to train. (Pl.'s Mem. 8.) In *Amnesty America,* the Second Circuit suggested in dicta that to state a claim for a municipality's failure to train its employees, a plaintiff "need only plead that the city's failure to train caused the constitutional violation," because "[i]t is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage[.]" 361 F.3d at 130 n.10. However, such a relaxed pleading standard is difficult to reconcile with *Twombly's* subsequent pronouncement that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions," *Twombly,* 550 U.S. at 555 (alteration in original) (internal quotation marks omitted), or with *Iqbal's* requirement that a plaintiff must "plead [ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal,* 556 U.S. at 678. Although "[a] municipality's failure to properly train its employees can under certain circumstances give rise to *Monell* liability, . . . a claim based on this theory still must be properly pled under *Iqbal.*" *Simms v. City of N.Y.*, No. 10-CV-3420, 2011 WL 4543051, at *2 (E.D.N.Y. Sept. 28, 2011) (citation and footnote omitted), *aff'd*, 480 F. App'x 627 (2d Cir. 2012); *see also Clarke*, 2022 WL 4387357, at *12 (granting motion to dismiss where Plaintiff failed to "allege a specific deficiency in either the [c]ity or the [c]ounty's training for his failure-to-train theory" when he only listed a series of topics he claimed defendants failed to adequately train on); *Smith v. Collins*, No. 15-CV-216, 2016 WL 817473, at *2 (S.D.N.Y. Feb. 26, 2016)

28

(noting that after *Twombly* and *Iqbal*, "the Second Circuit has indicated that some non-conclusory allegation as to deficient training programs is necessary at the pleading stage" (emphasis omitted) (citing *Simms v. City of N.Y.*, 480 F. App'x 627, 631 n. 4 (2d Cir. 2012)); *Santos v. N.Y.C.*, 847 F. Supp. 2d 573, 577 (S.D.N.Y. 2012) ("Because the existence of a municipal policy or practice, such as a failure to train or supervise, cannot be grounded solely on the conclusory allegations of the plaintiff, [the plaintiff's] claims against the City are dismissed with prejudice." (citation omitted)).

Beyond these concerns, the Supreme Court has emphasized that, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation marks omitted). This is because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id*. Accordingly, that Plaintiff has failed to plausibly allege any constitutional violation beyond his own single instance also dooms his failure-to-train claim. *See Dietrich,* 2020 WL 5209816, at *5 (dismissing plaintiff's failure to train claim when plaintiff "points only to his own experience" which did not constitute a pattern); *Galgano v. Cnty. of Putnam*, No. 16-CV-3572, 2020 WL 3618512, at *15 (S.D.N.Y. July 2, 2020) (dismissing failure to train claim when "[the] [p]laintiff has alleged no pattern of similar constitutional violations in other cases" that would put the town on notice (quotation marks omitted)); *Corbett v. City of N.Y.,* No. 15-CV-9214, 2016 WL 7429447, at *6 (S.D.N.Y. Dec. 22, 2016) ("The Court will not infer a deficiency in training by speculation based upon a single alleged constitutional violation. . . . [T]o draw such an inference based upon a single

allegedly unconstitutional act would be to entertain a claim that falls uncomfortably close to municipal vicarious liability, which is not cognizable under § 1983." (citations omitted)).

Plaintiff argues that his failure to train claim should survive even if predicated on a single incident.  (Pl.'s Mem. 6–7.)  However, a municipality can be found to be deliberately indifferent based on a single constitutional violation only where "the unconstitutional consequences of failing to train . . . [are] so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations."  *Connick*, 563 U.S. at 64.  In other words, that violation must be a "highly predictable consequence" of the failure to train.  *Id*.  (quotation marks omitted).  The Supreme Court has explained that single incident liability could apply where a city's failure to train its officers about the constitutional limits on the use of deadly force could reflect the city's deliberate indifference to violations of constitutional rights because "in the absence of training, there is no way for novice officers to obtain the legal knowledge they require" therefore "an obvious need for some form of training" exists*.  Id.; see also Prevost v. City of N.Y.*, No. 13-CV-3760, 2014 WL 6907560, at *7 (S.D.N.Y. Dec. 9, 2014) (finding that constitutional violations were a highly predictable consequence of the municipality's "failure to train its officers on the circumstances in which a privileged use of force causes probable cause to dissipate").  Notably, the Supreme Court has characterized this exception as "narrow" and "rare."  *Connick*, 563 U.S. at 64.

In *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363 (S.D.N.Y. 2013), the court noted that [w]hile some have argued that the *Connick* decision so narrowed the single-incident theory as to essentially eliminate it, courts across the country have continued to apply that theory post-*Connick* when its strict requirements have been met."  *Id*. at 391.  Relying on out of circuit precedent, the *Chamberlain* court held that failure to train was adequately pledged under the

single incident theory when the police's "manual section on [emotionally disturbed persons ("EDPs")] contains no guidance and no indication that WPPD officers receive any training regarding interacting with EDPs, as the policies contained therein relate solely to procedures once the police have brought an EDP to a hospital." *Id.* at 393.

Since *Chamberlain*, "[c]ourts in this Circuit and others have found that the single-incident theory is available only when the evidence reflects a complete lack of any training or where the training is so inadequate that it amounts to a 'lack of training.'" *House v. City of N.Y.*, No. 18-CV-6693, 2020 WL 6891830, at *19 (S.D.N.Y. Nov. 24, 2020) (quoting *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 254–55 (E.D.N.Y. 2014) (collecting cases)); *see also O'Brien v. Barrows*, 556 Fed. Appx. 2, 5 (2d Cir. 2014) (summary order) ("[T]he Court has suggested that failing to provide an armed police officer with *any* training about the constitutional limitations on the use of deadly force could constitute deliberate indifference." (emphasis in original)).

In support of his position, Plaintiff claims that the need for training to protect inmates from one another is "patently obvious" and that "unless one lives under a rock or is completely oblivious of what transpires inside prison, they would know that if the employees are not adequately trained, there is a likelihood of violation of [P]laintiff's constitutional rights[,] i.e. being assaulted by or on behalf of inmates who have threatened the [P]laintiff." (Pl's. Mem. 6.) However, Plaintiff has not pled facts that would plausibly allege a complete lack of any training. Plaintiff broadly alleges that the County has "failed to adequately train its employees when dealing with situations as outlined in [P]laintiff's complaint" and "does not have a training procedure that would allow its employees to adequately address concerns voiced by individuals such as [P]laintiff." (TAC ¶ 36.) These allegations are wholly conclusory. This case is therefore unlike *Chamberlain,* where the complaint specifically alleged facts that the police

department had a complete lack of police training regarding interacting with emotionally

disturbed persons, as Plaintiff has not alleged any facts from any manual, website, or any Jail

training practice or policy from which he can plausibly allege an absence of any training on the

protection of inmates that face specific threats.  *Chamberlin*, 986 F. Supp. 2d at 393; *see also*

*Edrei v. City of N.Y.*, 254 F. Supp. 3d 565, 581 & n.6 (S.D.N.Y. 2017), *aff'd sub nom. Edrei v.*

*Maguire*, 892 F.3d 525 (2d Cir. 2018) (holding failure to train claim sufficiently alleged under

single incident theory when the complaint plausibly alleged that the New York Police

Department did not change its policies or practices to discuss the proper usage of long range

acoustic devices once the devices were being used in the field, instead, the patrol guide just

included instructions to police officers to use "the minimal necessary force" while on patrol).

Because Plaintiff has not plausibly alleged a complete lack of any training regarding

protective custody by providing any fact that would make such an assertion not just conceivable

but plausible, he fails to plausibly allege a failure to train claim under the single incident theory.

*See Smith v. Town of Lloyd*, No. 17-CV-77, 2017 WL 11446304, at *5 (N.D.N.Y. Dec. 18, 2017)

(dismissing failure to train claim because "the single-incident theory is only triggered when a

plaintiff has alleged the absence of training in the first place"); *Copelin v. Suffolk Cnty.*, No. 13-

CV-3237, 2013 WL 5460748, at *4 n.2 (E.D.N.Y. Sept. 30, 2013) ("[T]his case does not fall

within that narrow and 'rare' range of cases, particularly because [the] plaintiff does not allege a

complete lack of training of [c]ounty deputy sheriff investigators or that [c]ounty deputy sheriff

investigators had an utter lack of an ability to cope with constitutional situations[.]" (citation and

quotation marks omitted)); *see also House*, 2020 WL 6891830, at *19 (holding that a plaintiff's

single incident failure to train claim failed on summary judgment when, despite the officer not

receiving formal training on protective custody, he did receive "some training" regarding the

subject either at the Correctional Officer Academy or on the job); *Dillman v. Tuolumne Cnty.,*

No. 13–CV–404, 2013 WL 3832736, at *6–8 (E.D. Cal. July 23, 2013) (dismissing claim under

single-incident theory where plaintiff challenged adequacy, rather than lack of existence, of

training regarding proper use of handcuffs and strip searches).

Accordingly, Defendants' Motion with regard to municipal liability is granted and

Plaintiff's claim is dismissed.

### 3.  State Law Claims

Federal courts have the discretion to deem a claim abandoned when a defendant moves to

dismiss that claim and the plaintiff fails to address in their opposition papers the defendant's

arguments for dismissing such a claim.  *See, e.g., Lipton v. Cnty. of Orange*, 315 F. Supp. 2d

434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a

plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *Anti–*

*Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to

provide argument on a point at issue constitutes abandonment of the issue . . . which provides an

independent basis for dismissal."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997); *see also Robinson v.*

*Fischer*, No. 09–CV–8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) (collecting

cases).

Plaintiff brings several state claims in addition to his federal claims: intentional and

negligent infliction of emotional distress; New York common law negligence; violations of the

New York State Constitution and Human and Civil Rights Law; negligent screening, training,

hiring, and retention; negligent training and supervision; and respondeat superior liability.  (TAC

¶¶ 71–89.)  Defendants argue that such claims should be dismissed because Plaintiff's federal

claims are deficient as a matter of law and additionally provide independent reasons each state

law claim was deficient in its own right.  (Defs.' Mem. 19–22.)  In Plaintiff's Reply, Plaintiff

responds stating "[s]ince the [D]efendants have requested that the Court decline to exercise

supplemental jurisdiction over the state law claims because the federal claims are subject to

dismissal, [P]laintiff only addresses in this opposition the four (4) federal causes of action that

remain."  (Pl.'s Mem. 2.)  Plaintiff has failed to respond to Defendants' arguments for dismissing

his state claims, therefore, this Court holds that Plaintiff has abandoned his state claims.  *Laface*

*v. E. Suffolk BOCES*, No. 18-CV-1314, 2019 WL 1959489, at *8 (E.D.N.Y. May 2, 2019) ("In

the Second Circuit, a plaintiff's failure to respond to contentions raised in a motion to dismiss

constitute[s] an abandonment of those claims." (alteration and quotation marks omitted)

(collecting cases)); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442,

2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a

plaintiff abandons a claim by failing to address the defendant's arguments in support of

dismissing that claim.").

### III.   Conclusion

For the foregoing reasons, Defendants' Motion is granted in part and denied in part.[7]

Defendants' Motion is granted with regards to Plaintiff's conditions of confinement and failure

---

[7] Plaintiff names Bhola as a defendant in the Third Amended Complaint but fails to
allege any facts related to Bhola.  Accordingly, Plaintiffs' claims against Bhola are dismissed.
*See Washington v. Melis*, No. 16-CV-6469, 2018 WL 2324079, at *3 (S.D.N.Y. May 22, 2018)
("Kaplan is not once mentioned by name or position in the body of the Amended Complaint,
which is itself grounds for dismissal."); *Manley v. Ramos*, No. 13-CV-2662, 2014 WL 1496094,
at *2 (S.D.N.Y. Apr. 16, 2014) (dismissing claims where the plaintiff "name[d] [police officers]
as defendants in the caption, but . . . never mention[ed] them again in the body of the
complaint"); *Ortiz v. Bloomberg*, No. 10-CV-9434, 2011 WL 4822829, at *3 (S.D.N.Y. Oct. 7,
2011) (dismissing claims where "the only named reference to [certain correctional officers]
[was] in the caption of the [c]omplaint, and the only additional references to these defendants
[were] merely conclusory statements about their personal involvement and liability").
Additionally, Jason Planksy was named as a defendant in the Third Amended Complaint,
however the claims against him were limited to medical indifference claims.  (TAC; Pl.'s Mem.)

to protect claims against Bourhill, Grant, Vollmer, Roberts, Torres, Waal, Carozza, Lopez, and Doe Defendants and *Monell* liability.  Defendants' Motion is denied with regards to Plaintiff's conditions of confinement and failure to protect claims against Ficarrotta and Worrell.  Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's conditions of confinement and failure to protect claims against Bourhill, Grant, Vollmer, Roberts, Torres, Waal, Carozza, Lopez, and Doe Defendants and his *Monell* claims are dismissed without prejudice.  If Plaintiff wishes to file a fourth amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is further advised that the fourth amended complaint will completely replace, not supplement, the instant Third Amended Complaint.  The fourth amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to timely file a fourth amended complaint, the claims may be dismissed with prejudice.

The Court will hold a status conference on May 5, 2023, at 11:00 AM.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 125.)

---

Because Plaintiff has withdrawn claims based on inadequate medical care, the claims against Jason Planksy are dismissed.

SO ORDERED.

Dated:    March 24, 2023
           White Plains, New York

_____
KENNETH M. KARAS
United States District Judge