UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ERIC MCCORMICK,

                                    Plaintiff,

                    v.

JOSEPH K. SPANO, *et al.*,

                                    Defendants.

No. 19-CV-2916 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Vik Pawar, Esq.
Vik Pawar Law
New York, NY
*Counsel for Plaintiff*

Irma W. Cosgriff, Esq.
Giacomo G. Micciche, Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants*

Paul A. Sanders, Esq.
Barclay Damon LLP
Rochester, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Eric McCormick ("Plaintiff") brings this Action against several officers at Westchester County Jail ("Defendants") and Westchester County, arguing Defendants violated his constitutional rights by failing to protect him from several assaults during his pretrial detention. Before the Court is Defendants' Motion to Dismiss Plaintiff's Fourth Amended Complaint, which, by stipulation, has been whittled down to a single count against Defendants under 42 U.S.C. § 1983 for failure to protect and unconstitutional conditions of confinement.  For the

following reasons, the Court grants Defendants' Motion to Dismiss as to defendants Michael

Bourhill ("Bourhill"), Salvatore Ficarrotta ("Ficarrotta"), Troy Worrell ("Worrell"), and Ruben

Torres ("Torres"), and otherwise denies it.

I.  Background

A.  Factual Background

Plaintiff was detained at Westchester County Jail ("WCJ") at times relevant to this

Action.  (*See* Fourth Am. Compl. ("FAC") ¶ 10 (Dkt. No. 143).)  On December 12, 2017,

Plaintiff encountered certain individuals who were co-defendants in his ongoing criminal

prosecution while taking part in a proffer session with prosecutors at this courthouse.  (*Id.* ¶ 12.)

These co-defendants—one of whom was a member of the Bloods gang—inferred that Plaintiff

was a cooperating witness, and thus "sent out a 'word' to other inmates" at WCJ "that [P]laintiff

was cooperating, and a 'snitch' and that [P]laintiff should and would be assaulted."  (*Id.* ¶ 14.)

When Plaintiff returned to WCJ, "more co-defendants" in Plaintiff's prosecution

"threatened [P]laintiff . . . by stating that they 'knew that [he] was a snitch' and that they would

get everyone to 'stomp [him] out.'"  (*Id.* ¶ 15.)  Plaintiff received similar threats in the following

days, including from another Bloods member, and other inmates punched Plaintiff "because

[Plaintiff] was a 'snitch.'"  (*Id.* ¶ 16.)  Following this first assault, Plaintiff approached Hector

Lopez ("Lopez"), a sergeant, and informed him of both the verbal threats and assaults, including

from Bloods members.  (*Id.* ¶ 17.)  Lopez told Plaintiff he "would be immediately protected

because he was targeted for being a cooperating witness," but Lopez "never followed up" on

those assurances.  (*Id.* ¶¶ 17–18.)

Threats against Plaintiff continued through early 2018, including from another Bloods

member.  (*Id.* ¶¶ 19–22.)  Plaintiff again informed Lopez, and now also informed Torres, that he

2

felt his safety was at risk.  (*Id.* ¶ 23.)  Lopez and Torres "again assured [P]laintiff that they would undertake an investigation" and represented to Plaintiff that he would be "placed in protective custody."  (*Id.* ¶ 24.)  On March 1, 2018, Plaintiff was threatened and assaulted by two more inmates, one of whom was a Bloods member.  (*Id.* ¶ 25.)  The assault was more severe this time—an inmate broke Plaintiff's nose, and he was taken to WCJ's emergency room, where another inmate threatened him and "labeled him a 'snitch.'"  (*Id.* ¶¶ 25–26.)  Plaintiff again "conveyed his concerns" to Lopez and Torres, and now also informed corrections officers Bourhill, Ficarrotta, and Worrell "about these threats and assaults."  (*Id.* ¶ 27.)  Worrell and Ficarrotta then took Plaintiff to the hospital.  (*Id.* ¶ 28.)

After Plaintiff's release from the hospital, he relayed his history of threats, including their relation to the "snitch" accusations, to corrections officer Mathew Waal-Rivera ("Waal-Rivera") and Captain Christopher Roberts ("Roberts"), who both "assured [P]laintiff that in addition to Bourhill, Ficarrotta, Worrell, Lopez[,] and Torres, they themselves would protect [P]laintiff from any further harm."  (*Id.* ¶ 29.)  Nevertheless, an inmate who had previously threatened Plaintiff "had moved into [Plaintiff's] unit . . . despite [Defendants'] assurances that [Plaintiff] would be protected from" his harassers, and, not long after Plaintiff "informed the individual [D]efendants" of the inmate's move, that inmate "ran up to [Plaintiff], called him a snitch[,] and punched him in the face, breaking his jaw."  (*Id.* ¶¶ 30–31.)

Plaintiff then "fil[ed] various grievances about the threats to his safety . . . much the same way he informed the other defendants," but his complaints were dismissed or otherwise ignored. (*Id.* ¶ 32.)  Plaintiff "appealed the decision to the extent procedures were available to him."  (*Id.* ¶ 33.)  The injuries he sustained from the several assaults continue to afflict him.  (*Id.* ¶ 34.)

3

B.  Procedural History

Plaintiff initiated this Action on April 2, 2019.  (*See* Compl. (Dkt. No. 1).)  Defendants first moved to dismiss on July 16, 2019.  (*See* Mot. to Dismiss (Dkt. No. 20).)  The Court denied the first Motion to Dismiss without prejudice after Plaintiff proposed an amendment to his Complaint.  (*See* Memo Endorsement (Dkt. No. 24).)  Plaintiff did not amend, and at Plaintiff's request, the Court granted a brief stay.  (*See* Memo Endorsement (Dkt. No. 30).)  Plaintiff then filed the First Amended Complaint on September 24, 2020.  (*See* First Am. Compl. (Dkt. No. 69).)  Plaintiff then filed a Second Amended Complaint.  (*See* Second Am. Compl. (Dkt. No. 91).)  After briefing on the motion to dismiss the Second Amended Complaint, Plaintiff proposed additional amendments, and the Court granted Plaintiff leave to amend again.  (*See* Order (Dkt. No. 117).)  Plaintiff then filed a Third Amended Complaint ("TAC").  (*See* TAC (Dkt. No. 118).)  Defendants filed a motion to dismiss the TAC, (*see* Mot. to Dismiss TAC (Dkt. No. 125)), which the Court granted in part and denied in part after briefing and oral argument on March 24, 2023, *see McCormick v. Cnty. of Westchester*, No. 19-CV-2916, 2023 WL 2632204 (S.D.N.Y. Mar. 24, 2023).  The Court granted the Motion as to all claims except Plaintiff's conditions of confinement and failure to protect claims against Ficarrotta and Worrell.  (*Id.* at 35.)

Plaintiff then filed the Fourth Amended Complaint.  (*See* FAC.)  Plaintiff stipulated to the dismissal with prejudice of all but the second count in the FAC, which the Court granted.  (*See* Stipulation & Order of Dismissal (Dkt. No. 153).)  Defendants subsequently moved to dismiss the FAC.  (*See* Mot. to Dismiss FAC (the "Motion") (Dkt. No. 154); Mem. of L. in Supp. re: Mot. to Dismiss ("Defs.' Mem.") (Dkt. No. 156).)  Plaintiff timely responded, (*see* Mem. of L. in Opp'n re: Mot. to Dismiss ("Pl.'s Opp.") (Dkt. No. 159)), and Defendants replied, (*see* Reply Mem. of L. in Supp. re: Mot. to Dismiss ("Reply") (Dkt. No. 160).)

## II. Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (noting that a district court should only consider the complaint, documents appended to the complaint or incorporated by reference, and matters judicial notice can be taken of in ascertaining facts for a motion to dismiss).

B.   Analysis

1.  PLRA Exhaustion

The Court addresses Defendants' final argument first.  Defendants contend that Plaintiff failed to exhaust the pre-suit requirements imposed in the Prison Litigation Reform Act ("PLRA"), that his failure to exhaust is evident from the face of the FAC, and that accordingly, the FAC should be dismissed in its entirety.  (*See* Defs.' Mem. 14–16.)

Because Plaintiff brought this suit while in custody at the Westchester County Jail, and his suit is "with respect to prison conditions under [§] 1983," 42 U.S.C. § 1997e(a), it is subject to the PLRA's exhaustion requirements.  *See Davis v. Barrett*, 576 F.3d 129, 132 (2d Cir. 2009)

("The . . . phrase 'prison conditions' in the PLRA refers to 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)); *see also United States v. Al-Marri*, 239 F. Supp. 2d 366, 367 n.1 (S.D.N.Y. 2002) (explaining that courts in the Second Circuit have held the PLRA applies to pretrial detainees). The PLRA requires "that inmates complaining about prison conditions exhaust prison grievance remedies before initiating a lawsuit." *Jones v. Bock*, 549 U.S. 199, 204 (2007). This requirement "allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court," and "has the potential to . . . improve the quality of suits that are filed by producing a useful administrative record." *Id.*

"PLRA exhaustion is a standard affirmative defense," and "not a pleading requirement," so "inmates are not required to specially plead or demonstrate [compliance with its] exhaustion [requirements] in their complaints." *Perttu v. Richards*, 605 U.S. 460, 469 (2025) (quotation marks and citations omitted). However, where failure to exhaust a prison's grievance remedies is plain from the face of the complaint, courts grant motions to dismiss under 12(b)(6) on that basis. *See Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[A] district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement."); *Pearson v. Cappelli*, No. 24-CV-8254, 2026 WL 851351, at *3 (S.D.N.Y. Mar. 26, 2026) (noting that "where failure to exhaust a prison's grievance remedies is plain from the face of the complaint, courts grant motions to dismiss under 12(b)(6) on that basis"); *see also McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003) ("If nonexhaustion is clear from the face of

the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted.").

Plaintiff contends first that PLRA does not apply because he is not presently incarcerated, and the "FAC was filed when he was no longer in custody," so he should be exempt from the PLRA's requirements. (Pl.'s Opp. 8.) But the PLRA continues to govern a suit after an inmate leaves custody if the suit was initiated while the inmate was in custody. *See, e.g.*, *Armand v. Simonson*, No. 12-CV-7709, 2016 WL 1257972, at *16 (S.D.N.Y. Mar. 30, 2016) ("[T]he PLRA applies even to a plaintiff who is not currently incarcerated, provided that he had been incarcerated when he brought his initial suit." (citing, *inter alia*, *Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2004)); *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *3 (S.D.N.Y. May 8, 2006) ("[C]ourts have determined that the PLRA does apply to a prisoner who filed a suit during his confinement and was thereafter released from prison." (footnote omitted) (collecting cases)). Here, Plaintiff does not dispute that the initial complaint was brought when he was in custody—he only notes he was not in custody at the facility where the assaults he alleges took place. (*See generally* Pl's Opp. 8; Letter from Pl. to Court (dated May 6, 2019).)[1] It makes no difference that Plaintiff later amended the Complaint. The PLRA's text describes when an action is "brought"—and amending a complaint does not "bring" an action anew. 42 U.S.C. § 1997e(a); *see also Pearson v. Cappelli*, No. 24-CV-8254, 2026 WL 851351, at *4 n.3 (S.D.N.Y. Mar. 26, 2026) (collecting cases).

---

[1] Plaintiff's transfer to another facility could bear on whether the PLRA's remedies were available to him, but that is not an argument he makes at this early stage (nor does he need to). *See Leacock v. City of New York*, No. 01-CV-2849, 2005 WL 323723, at *5 (S.D.N.Y. 2005) (discussing *Berry v. Kerik*, 366 F.3d 85 (2d Cir. 2004)).

Plaintiff next contends Defendants waived PLRA exhaustion—an affirmative defense—because Defendants did not raise it in previous Rule 12 motions to dismiss, and Fed. R. Civ. P. 12(g)(2) prevents a party "that makes a motion under this rule" from "mak[ing] another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."  (Pl.'s Opp. 9.)  However, "[n]otwithstanding Rule 12(g), an amended complaint . . . entitle[s] a defendant to raise substantive arguments aimed at judicial resolution of the controversy in a new responsive pleading, even if those arguments were not raised in response to the original complaint."  *In re Mylan N.V. Sec. Litig.*, 379 F. Supp. 3d 198, 210 n.7 (S.D.N.Y. 2019) (quotation marks omitted) (quoting *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006)); *Essani v. Earley*, No. 13-CV-3424, 2019 WL 3388949, at *5 (E.D.N.Y. May 23, 2019) (same).

As noted, courts will find dismissal of a complaint on PLRA exhaustion appropriate when failure to exhaust is "clear on the face of the complaint."  *Williams*, 829 F.3d at 122.  For example, dismissal may be appropriate when a complaint is brought far too soon after the alleged event for exhaustion to have been feasible at the time of filing, *see Stokes v. de Blasio*, No. 17-CV-7890, 2019 WL 132279, at *2–3 (S.D.N.Y. Jan. 8, 2019), or when the complaint makes clear the plaintiff could have further appealed the denial of a grievance and did not, *see Mendoza v. Edge*, 615 F. Supp. 3d 163, 174 (E.D.N.Y. 2022).  Here, Plaintiff's factual allegations about his grievances are only that he "informed [Westchester] County by filing various grievances about the threats to his safety [and] need to be protected and [the] assault[s]" against him, but those grievances were "simply dismissed," and that Plaintiff "appealed the [effective denials of his grievances] to the extent the procedures were available to him."  (FAC ¶¶ 32–33.)  It does not follow that "it is clear from the face of [the] FAC that [Plaintiff] did not fully exhaust the

grievance procedure," (*contra* Defs.' Mem. 14)—Plaintiff contends that he *did* file grievances and exhaust the appeals process "to the extent [it was] available," (FAC ¶ 32).

Defendants next argue that Plaintiff's substantive allegations effectively incorporate Plaintiff's grievances into his Complaint by reference, so the Court may consider them at the pleading stage. (Defs.' Mem. 15.) And Defendants contend those grievances, which they provide as exhibits, include "no facts regarding a claim of failure to protect" and do not mention the relevant facts in the FAC. (*Id.*; *see also* Cosgriff Decl. Exs. A–C (Dkt. No. 155).) "On a motion to dismiss, a court may properly consider documents that a complaint incorporates by reference." *Verdi v. City of New York*, 306 F. Supp. 3d 532, 540 n.4 (S.D.N.Y. Jan. 22, 2018). But "[a] mere passing reference or even references . . . to a document outside the complaint does not, on its own, incorporate the document into the complaint;" rather, to be incorporated by reference, the references to the document must be "clear, definite, and substantial." *Wen v. New York City Regional Ctr., LLC*, 695 F. Supp. 3d 517, 533 (S.D.N.Y. 2023) (citation omitted), *aff'd*, No. 23-7506, 2024 WL 4180521 (2d Cir. Sept. 13, 2024) (summary order). Paragraphs 32 and 33 of the FAC are "mere passing references." *Id.* The FAC does not even "limited[ly] quot[e] from" the grievances, *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004), nor does it reference any particular grievances Plaintiff filed, for example, by date or number, *see Islam v. Fisher*, No. 07-CV-3225, 2008 WL 650380, at *2 (S.D.N.Y. Mar. 6, 2008). Moreover, the grievances do not "form[] the basis of [any] of Plaintiff's theories of" his claims, *76 Route 6 Holdings Inc. v. Town of Yorktown*, No. 25-CV-693, 2026 WL 867180, at *4 (S.D.N.Y. Mar. 30, 2026), because the cause of action premised on the County's grievance procedures was dismissed by stipulation, (*see* FAC ¶ 36). Indeed, the grievances are mentioned in the surviving cause of action as only one of a number of ways Defendants might have had notice of the risks to

10

Plaintiff's safety alongside Plaintiff's other complaints and the assaults themselves, without reference to any particular grievance, so they are not integral to or substantially referenced in the FAC, (*see* FAC ¶¶ 46, 55).  The Court therefore does not deem these grievances incorporated by reference in the FAC.  And, even if the Court *did* consider these grievances incorporated by reference, nowhere in Defendants' Declaration do they say these grievances are *all* the grievances Plaintiff filed during the relevant timeframe, so the Court could not conclude at this stage that Plaintiff had not filed a more topical grievance than the ones they present.  (*See generally* Cosgriff Decl.)  In fact, the Declaration does not state that any of the grievances included are the ones Plaintiff references in the FAC—nor could it, given the vagueness with which the FAC "cites" those grievances.  (*Id.*)

Accordingly, considering the grievances at this stage would improperly convert the Motion to a motion for summary judgment.  *See 76 Route 6 Holdings, Inc.*, 2026 WL 867180, at *2 ("When presented with such a dispute between the [p]arties, the [c]ourt's duty is to consider which, if any, of these exhibits may be considered on a Motion to Dismiss without converting that Motion to one for summary judgment pursuant to Rule 56."); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10-CV-6309, 2011 WL 2946168, at *2 n.1 (S.D.N.Y. July 19, 2011) ("The Court cannot consider those exhibits without converting the motion to dismiss into a motion for summary judgment, which the Court declines to do.").

### 2.  § 1983 Claims

After stipulating to the dismissal of all other causes of action, one count remains in Plaintiff's Complaint—failure to protect and conditions of confinement under 42 U.S.C. § 1983.

(*See* FAC ¶¶ 42–57; Stipulation & Order of Dismissal.)  Plaintiff has also dropped his claims against the County.[2]

As the Court previously explained, Plaintiff's claim requires him to "plausibly allege (1) that he suffered a sufficiently serious constitutional deprivation, and (2) that the defendant acted with deliberate indifference."  *McCormick*, 2023 WL 2632204, at *4 (citations and quotation marks omitted, alterations adopted).  The first element requires Plaintiff to "show that the alleged deprivation is sufficiently serious," *i.e.*, "he was incarcerated under conditions posing a substantial risk of serious harm," and the second element requires Plaintiff to show Defendants at least "recklessly fail[ed] to act with reasonable care to mitigate the risk . . . even though [Defendants] knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.* (citations and quotation marks omitted).

The Court previously held that the TAC offered "only minimal detail regarding the nature of the threats or assaults he conveyed to" Roberts, Torres, Waal-Rivera, and Lopez, and likewise "d[id] not allege he communicated anything about the assault to Bourhill."  *Id.* at *7.  In the FAC, those allegations have changed in pertinent part.  As to Lopez, Plaintiff previously alleged only that Plaintiff "informed Lopez that he was concerned about his safety due to the threats of assault by inmates at the jail."  (TAC ¶¶ 18–19.)  Plaintiff now alleges he conveyed to Lopez

---

[2] The stipulation dismisses the causes of action that specifically reference the County, which the second cause of action does not, (*see* Stipulation & Order of Dismissal), and in Plaintiff's submissions following the stipulation, the County is no longer included in the caption's list of defendants, (*see, e.g.*, Pl.'s Opp.).  In any event, the Court would dismiss the second cause of action to the extent it is alleged against the County because the County could only be held liable if Plaintiff alleged "(1) a municipal policy or custom that (2) cause[d] [him] to be subjected to (3) the deprivation of a constitutional right," *Agosto v. New York City Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020) (citation omitted), and the second cause of action is devoid of allegations of a municipal policy or custom, (*see* FAC ¶¶ 42–57).

both that his assaults included Bloods members and were "targeted [at him] for being a cooperating witness," and that Lopez offered to Plaintiff to be placed into protective custody, but Plaintiff never was. (FAC ¶¶ 17–18, 23–24.) Plaintiff also now alleges not only that Waal-Rivera was aware of previous assaults, (*see* TAC ¶¶ 19, 27), but also that Waal-Rivera was aware that the assaults were connected to Plaintiff's purportedly "being a snitch," information he simultaneously conveyed to Roberts, (*see* FAC ¶ 29). The allegations against Torres and Bourhill, however, look the same as in the TAC; the FAC has still not alleged Plaintiff told either of them that there was a gang connection to Plaintiff's assaults, or that the assaults were targeting Plaintiff because he was perceived as a cooperator. (*Compare* TAC ¶¶ 16–17 (alleging Plaintiff "relayed his concerns" to Torres, and gave Torres information about "the nature of the assaults and threats"), *with* FAC ¶¶ 23–24, 27 (again alleging Plaintiff gave Torres "information about the nature of the assaults and threats" and "conveyed his concerns" about safety to Torres); *compare* TAC ¶ 22 (alleging Plaintiff "informed Bourhill about these threats"), *with* FAC ¶ 27 (again alleging Plaintiff "informed Bourhill . . . about these threats").) The Court explained why that distinction was salient in its prior opinion. *See McCormick*, 2023 WL 2632204, at *7 (explaining that "courts in the Second Circuit have recognized that being labeled a snitch in the prison context poses a threat to an inmate's safety," and that "in failure-to-protect claims arising from prison gang violence, the deliberate indifference prong is often met when a plaintiff identifies his attacker(s) by gang affiliation to the defendants").

In the Opinion and Order granting in part and denying in part the motion to dismiss the TAC, the Court allowed Plaintiff's claims against Ficarrotta and Worrell to proceed, specifically finding "Plaintiff has plausibly alleged that Ficarrotta and Worrell acted with deliberate indifference *when Plaintiff informed them that he had been assaulted for being a snitch, and they*

13

*allegedly failed to place him in protective custody*," after which he was assaulted again. *McCormick*, 2023 WL 2632204, at *7 (emphasis added). The FAC, however, omits the detail that led this Court to allow the claims against them to proceed. (*Compare* TAC ¶ 23 ("Plaintiff also conveyed to Ficarrotta and Worrell that he was assaulted for being a 'snitch' and that he feared for his safety."), *with* FAC ¶ 27 ("Plaintiff also informed . . . Ficarrotta and Worrell about these threats and assaults.").) In his Opposition, Plaintiff argues only that the allegations against Ficarrotta and Worrell still allege "their role and knowledge about the assault and threats." (Pl.'s Opp. 7 n.4.) But the Court rejected exactly that argument in its Opinion resolving the motion to dismiss the TAC as to Torres, dismissing claims against him because while Plaintiff had alleged he "provided [Torres] detailed information about the nature of the assaults and threats," Plaintiff had not alleged "what specifically about the assault he communicated to Torres or that Torres was aware he was assaulted for being a snitch." *McCormick*, 2023 WL 2632204, at *7 & n.5. That deficiency was salient because, "[a]s the cases make clear, the description of the prior altercation must be sufficiently detailed so that the defendant knew or should have known the plaintiff's safety was at risk"—if Torres, like Ficarrotta and Worrell in the TAC, was aware of a reason the assaults were related to one another or might continue, the inference of his deliberate indifference would be plausible. *Id.*; *see also Nolen v. Goord*, No. 02-CV-499, 2006 WL 448686, at *8 n.8 (W.D.N.Y. Feb. 17, 2006) ("[U]nrelated attacks do not necessarily provide actual or constructive notice of an actual or specific significant risk of harm to an inmate."). But the FAC lacks those allegations as to Ficarrotta and Worrell, leaving the Court in the dark as to

14

whether they were told the relevant information that would establish their deliberate indifference.[3]

Accordingly, the Court finds Plaintiff has cured some of the deficiencies in the TAC as to the failure-to-protect and conditions-of-confinement claim, because Plaintiff's allegations now support a plausible inference that Waal-Rivera, Lopez, and Roberts "acted with deliberate indifference when Plaintiff informed [them] that he had been assaulted for being a snitch [and/or assaulted by members of a particular gang], and they allegedly failed to place him in protective custody." *McCormick*, 2023 WL 2632204, at *7 (citing *Ford v. Campbell*, No. 21-CV-89, 2021 WL 1601148, at *4–5 (D. Conn. Apr. 23, 2021)). However, the FAC's allegations undermine that inference as to Ficarrotta and Worrell, and remain insufficient as to Torres and Bourhill, so the Court grants the Motion as to them and denies it as to the remaining Defendants.

## III. Conclusion

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss as to Defendants Torres, Bourhill, Ficarrotta, and Worrell, and denies it as to Defendants Waal-Rivera, Lopez, and Roberts. The Court grants Plaintiff leave to amend *only* to clarify his allegations as to Ficarrotta and Worrell. The Court denies leave to amend as to any other issue or defendant because Defendants' pre-motion letters and this Court's previous Opinion gave Plaintiffs adequate notice of the deficiencies in the FAC, so any other claims dismissed here are

---

[3] The Court may not incorporate the TAC's allegations against Ficarrotta and Worrell into the FAC on its own initiative. The Court's previous Opinion explained that the FAC would "completely replace, not supplement, the" TAC and "must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider." *McCormick*, 2023 WL 2632204, at *15; *see also* 6 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1476 (3d ed. 2026) ("An amended pleading may adopt some or all of the averments of the original pleading in conformity with the incorporation by reference practice permitted by Rule 10(c). However, the identification of the particular allegations to be incorporated must be direct, clear, and explicit." (footnotes omitted)).

dismissed with prejudice.  *See Premium Merchant Funding 26, LLC v. Sonata Constr.*, No. 25-CV-1086, 2026 WL 867165, at *21 (Mar. 30, 2026) (dismissing deficient claims with prejudice in similar circumstances); *Leake v. Garden City Union Free Sch. Dist. Bd. of Educ.*, No. 23-CV-4243, 2024 WL 3252515, at *5 (E.D.N.Y. July 1, 2024) (same).  If Plaintiff intends to file a fifth amended complaint, he must do so within 14 days of this Order.

The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 119, 121, 154).

SO ORDERED.

DATED:    May 13, 2026
          White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

16